UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| M. GENE MARLIN AND OLD | § | |
| NATIONAL BANK, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| versus | § | CIVIL ACTION H-04-4443 |
| | § | |
| | § | |
| MOODY NATIONAL BANK, N.A., et al., | § | |
| | § | |
| Defendants. | § | |

## Opinion on Attorney Fees

1.     *Introduction.*

Gene Marlin and Old National Bank lost millions when Larry Nixon – Marlin's business partner – defrauded them both.  Nixon was judgment proof, so Marlin sued twenty-five parties who had done business with Marlin and Nixon under a variety of legal theories. These included Moody National Bank and an officer of Moody, Michael Hazelwood.  After some months, Marlin abandoned his claims against everyone except Moody and Hazelwood.  Marlin's claims were found to be spiteful and unfounded. Moody and Hazelwood want attorneys' fees.

2.     *Theories and Fees.*

Marlin and Old National argue, in effect, that fees should be a function of the particular legal theories.  For instance, they argue that fees may not be awarded under the Racketeering Influenced & Corrupt Organizations Act – so fees for defending the RICO claims should be excluded.

Nonsense.  Marlin and Old National have one "cause of action" – that is, one set of facts – and a long pleading burdened with legal theories.  Fees are not awarded per legal theory; rather, they are based on the plaintiffs' bad faith.  Here, Marlin and Old National brought their RICO claims – and others – in bad faith.  This argument fails.

3.    *Rule 11.*

   A.    *Notice.*

Technically, the court is "assessing sanctions on its own initiative" under Fed. R. Civ. P. Rule 11(c)(1)(B).   In fact, Moody warned Marlin very early that, if Marlin persisted with his unsupportable suit, Moody would seek sanctions.   While the court initiated the process before Moody moved, this only changes the subsection for the fee adjustment.   Moody and Hazelwood had already drafted a motion under Rule 11, and they would have moved if the court had not.

Under the rule, Marlin must have notice and hearing.   Marlin argues that he did not.   On February 23, 2005, at the very first hearing, this court warned Marlin that he did not appear to have factual support and that fees would be awarded if Marlin failed to quit his legal posturing and focus on the facts.   On April 15, 2005, Moody wrote Marlin to remind him of his duty under Rule 11 to ensure their claims had adequate factual and legal support.   It was coupled with a demand that Marlin withdraw his claims.   At later hearings, the court continued to be clear that fees seemed likely.

Marlin appears to believe the notice requirement is some formulaic ritual, where the court strikes a gong and announces from a mountain top "I hereby give notice!"   He is wrong.   Notice is simply when the court informs a party that – for a predicate – sanctions may be imposed.   This was often done.   Marlin's argument that he lacked notice is contradicted by the facts, clearly.

   B.    *Hearing.*

Marlin also argues he was not granted a hearing.   The court wonders whether Marlin detects the irony here.   Oral argument is only one form of hearing.   Someone is heard when he has the occasion to "petition the government for redress of grievances."   And it is in Marlin's opportunity to be heard – his pleading entitled "Plaintiff's Objections to Defendants' Fees and Costs" – that he argues he has not been given the chance.   Further, on October 19, 2006, at the hearing on fee shifting, he neglected to mention his lack of a hearing on fee shifting.   In theory, this court could (re)announce its intention to shift fees, and allow Marlin to (re)file his objection. Instead, the court will simply overrule it.

4.    *Fee Shifting.*

On November 19, 2004, Marlin filed a 110-page complaint against twenty-five defendants under RICO and common-law theories.   Marlin sought treble damages under the RICO claims, that included: (a) bank fraud, (b) mail and wire fraud, (c) receiving funds taken by fraud, (d) transporting funds taken by fraud, (e) transporting persons to defraud, (f) money laundering, and (g) commercial bribery.   Common-law claims included: (h) fraud, (i) knowing participation in breach of fiduciary duty, (j) conversion, (k) theft, (l) conspiracy, and (m) negligence.

In February of 2005, Marlin began dismissing defendants, eventually leaving just two – Moody and Hazelwood – and six legal theories.   The remaining legal theories included (a) fraud, (b) negligence, (c) conspiracy to violate RICO, and (d) conspiracy to commit fraud, money laundering, and theft.

This court has held that none had factual support.

Costs may be imposed directly on the party when the allegations lack factual support.  *Skidmore Energy, Inc. v. KPMG*, 455 F. 3d 564, 568 (5th Cir. 2006).  Marlin was a successful businessman – this is not the case of some inept attorney filing pleadings without the client's knowledge.   Also, though Marlin changed counsel during the litigation, his behavior stayed the same.   Marlin should bear the costs he imposed on Moody and Hazelwood, unnecessarily.


5.    *Award.*

Moody requests costs of $60,572.59 and fees of $542,886.10.  Hazelwood requests costs of $17,345.34 and fees of $ 221,752.50.   These are the costs for the whole suit. Marlin does not and can not dispute the hours or rates.   The issue is whether those figures are reasonable under the circumstances.

Moody produced and examined thousands of documents, prepared for and attended some two dozen depositions, and responded to wide-ranging allegations over nearly two years of litigation.   The costs and fees requested are reasonable.

Marlin's lack of a proper foundation would have been disclosed by a reasonable investigation, careful of the facts.  He argues that the depositions did not go as he thought they would; witnesses did not say under oath what Marlin claims they said before.   His

bad investigation does not justify imposing costs on Moody and Hazelwood.

Marlin's reliance on his faulty investigation ignores another part of his bad faith; he threw serious and baseless legal claims at the bank and its officer. Experience suggests that the quality of a pleading is inversely proportional to the volume of legal theories it attaches to an event. Marlin and his lawyers made no attempt to marshal facts for each theory. He sued on banking regulations that allow no private claim. His assertion of these claims was unprincipled – ranging from reckless to malicious. He must pay for the harm he has done.

Marlin filed the complaint on November 19, 2004. The court first mentioned fees at a February conference, and Moody warned of its intent to seek sanctions in a letter dated April 15, 2005. Marlin knew then not only that his case certainly lacked merit but that sanctions were a distinct possibility.

6.    *Conclusion.*

Gene Marlin and Old National Bank must reimburse Moody and Hazelwood's fees and costs beginning April 22, 2005 – one week after Moody's letter. Moody National Bank's fees and costs are $403,126.85, and $56,413.88. Michael Hazelwoods' fees and costs are $162,590.00 and $15,416.70.

Signed May 23, 2007, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge